IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES TORELLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-3726-O-BH |
| | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEM, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case has been automatically referred for pretrial management. Before the Court for recommendation is *Defendants' Motion to Dismiss Plaintiff's Original Petition for Failure to State a Claim*, filed October 10, 2012 (doc. 9). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND[1]

This case involves attempted foreclosure of real property located at 814 Greenhaven Drive, Richardson, Texas 75080 (the Property). (doc. 1-2 at 5.)[2] On August 31, 2012, Charles Torello (Plaintiff) filed this *pro se* suit against Mortgage Electronic Registration Systems (MERS), Bank of America, N.A. (BANA), as successor by merger to BAC Home Loans Servicing, LP (BAC), and Fannie Mae in the 160th Judicial District Court of Dallas County, Texas. (*See id.* at 2.)

Plaintiff alleges that he purchased the Property on or about January 7, 2003, with a

---

[1]  The background facts are summarized from Plaintiff's complaint in his first action (doc. 9-2) and his complaint in the current action (doc. 1-2).

[2]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

promissory note in the amount of $115,900.00 and a deed of trust securing the note.  (*Id.* at 6.)  Both the note and deed of trust named Franklin American Mortgage Company (Franklin) as the "Lender." (docs. 1-2 at 4, 6, 31; 9-2 at 28.)   The deed of trust named MERS, the nominee for Lender and its successors and assigns, as the beneficiary.  (doc. 1-2 at 31.)  It provided that MERS held "legal title" to the Property and granted MERS the right to exercise any and all of the interests Borrower (Plaintiff) granted Lender, including but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender, including but not limited to, releasing and canceling the deed of trust.  (*Id.* at 33.)

On September 15, 2009, MERS "electronically" filed an "Appointment of Substitute Trustee" in the Dallas County property records.  (doc. 9-2 at 18.)  The appointment was signed by Stephen C. Porter, identified as the "attorney-in-fact" of BAC.  (*Id.*)  On September 18, 2009, MERS, as Lender's nominee, assigned the note and deed of trust to BAC.  (doc. 1-2 at 4, 29.)  The assignment document was signed by Mr. Porter (identified as "assistant secretary" of MERS), was notarized, and had an effective date of July 15, 2009.  (*See id.* at 29–30.)  It was filed with the Dallas County Clerk on September 23, 2009. (*Id.*)

## A.   First Lawsuit

Sometime in 2010, the law firm of Barrett, Daffin, Frappier, Turner & Engel, LLP (the law firm) sent Plaintiff a notice of foreclosure on behalf of BAC.  (doc. 9-2 at 17.)  On April 4, 2011, Plaintiff sued MERS (as BAC's nominee), BAC, and the law firm.  (*Id.* at 13.)  He alleged that the defendants lacked standing to foreclose because there was no recorded assignment in the Dallas property records "clearly demonstrating" that they possessed the note.  (*Id.* at 25.)  Plaintiff also contended that upon MERS's assignment, BAC stood "in the shoes" of MERS and acquired "only

those rights and remedies [that MERS] would have had" in the note.  (*Id.* at 18.)  He claimed that

BAC acquired no interest in the note because MERS did "not take possession of the note nor receive

payments [under] the note," and because the assignment "[did] not in any way purport to be by an

entity that [was] a 'note holder.'"  (*See id.* at 18–22.)  BAC purportedly failed to hold the note for

the additional reasons that the note was "not properly negotiated" as required by the Texas Uniform

Commercial Code (UCC) and "was allegedly in default" when MERS assigned it.  (*Id.* at 21–22.)

BAC also allegedly failed to file a bond with the Texas Secretary of State.  (*Id.*)

Plaintiff, who was represented by counsel, asserted claims for breach of contract, anticipatory

breach of contract, and   unreasonable collection efforts.  (*Id.* at 23–24.)  He claimed that the

defendants "violated the Texas Constitution and [the] Texas Property Code" and breached the deed

of trust and the "requirement of good faith and fair dealing."  (*Id.* at 22–23.)  He requested actual

and punitive damages, an accounting, declarations that the defendants "waived their right to

accelerate" the note and did "not have standing to foreclose" on the Property, attorney's fees, and

court costs.  (*Id.* at 24–27.)

The defendants removed the action to the U.S. District Court for the Northern District of

Texas based on diversity jurisdiction and later moved for summary judgment.  The court granted

their motion and dismissed with prejudice Plaintiff's claims.  *See Torello v. Mortgage Elec.*

*Registration Sys., Inc.*, No. 3:11-CV-0948-G, 2012 WL 1888134, at *3 (N.D. Tex. May 24, 2012).

**B.**     **The Current Lawsuit**

In this current *pro se* action, Plaintiff contends that although the assignment document

"identified the payee on the Note as [MERS]," only Franklin could properly assign the note because

it was the only party actually listed as the "payee" on the note and the "Lender" on the deed of trust.

3

(doc. 1-2 at 4–5.)  He also asserts that on July 18, 2012, he "accessed the Fannie Mae website" and learned "that Fannie Mae owned [his] loan."  (*Id.* at 7.)  On August 14, 2012, he again "accessed the Fannie Mae website" and this time his "search produced the result that Fannie Mae had no interest in the Property."  (*Id.* at 7–8.)

Also on August 14, 2012, Plaintiff received a notice of foreclosure from the law firm on BANA's behalf.  (*Id.* at 5, 17–18.)  The foreclosure notice included an "unsigned copy of the Notice of Substitute Trustee Sale naming [several individuals] as Substitute Trustee[s]."  (*Id.* at 5.)  It also stated that BANA had accelerated his note and would conduct a non-judicial foreclosure sale on September 4, 2012.  (*Id.* at 17–18.)  It listed BANA was both the mortgagee and mortgagee servicer of Plaintiff's loan.  (*Id.* at 17.)  Plaintiff claims that BANA was "named without any qualifying description of its position" and that no document was presented expressly authorizing BANA "to act as mortgage servicer" or "specifically identif[ying]" it as mortgagee.  (*Id.* at 5–6.)

On August 27, 2012, Plaintiff "responded" to BANA's foreclosure notice "by exercising his right and/or duty of inquiry by sending a series of questions" via certified mail regarding "the true identities" of the holder of the note and deed of trust, and seeking "to verify the debt."  (*Id.* at 7.)  He contends that this information was "material to [his] ability to assess whether [BANA's] proposed foreclosure [was] lawful."  (*Id.*)  Also on that date, Plaintiff accessed Fannie Mae's website for the third time and his search indicated that Fannie Mae had owned his loan since acquiring it "on or before May 31, 2009."  (*Id.* at 8.)  The website also stated that he could be eligible for the Home Affordable Refinance (HARP) and the Home Affordable Modification (HAMP) programs.  (*Id.*)  The next day, he "sent a certified letter to Fannie Mae inquiring about the ownership of the Note and the Deed of Trust" and Fannie Mae's "foreclosure requirements."  (*Id.*

at 8, 22.)  He also asked "to verify the debt" and to be given the "opportunity to negotiate any matter with [Fannie Mae] concerning [his] mortgage loan."  (*Id.* at 21–22.)

Plaintiff asserts claims for simple fraud and fraud by nondisclosure.  (*Id.* at 9–11.)  He essentially contends that by failing to respond to his written inquiries, the defendants fraudulently "concealed material facts related to the proposed foreclosure" on the Property.  (*Id.*)  He seeks to enjoin the foreclosure and obtain a declaration that the defendants "are not entitled [to] foreclose on [the] Property."  (*Id.* at 14.)  He requests actual, exemplary, and compensatory damages "for damage to his credit rating," pre and post judgment interest, and court costs.  (*Id.*)

On September 14, 2012, BANA and Fannie Mae (collectively, Defendants) removed the action to this Court asserting diversity jurisdiction under 28 U.S.C. § 1332.  (*See* doc. 1 at 1–3.)[3]  On October 10, 2012, Defendants moved to dismiss Plaintiff's complaint.  (*See* doc. 9.)  Plaintiff requested and was granted an extension to file a response (*see* docs. 11 and 12), but he failed to respond to Defendants' motion.  The motion is now ripe for recommendation.

## II.  RULE 12(b)(6) MOTION TO DISMISS

Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(6) on grounds of "res judicata" and failure to state a claim upon which relief can be granted.  (*See* doc. 9-1 at 10-11, 15–19.)

### A.    Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely

---

[3]  Although the state court issued a citation for MERS on August 31, 2012, the citation remained unserved as of the date of Defendants' removal to this Court.  (*See* docs. 1-3 at 8; 1-4 at 2.)

granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to

relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 679.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  However, "[i]f . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).  Lastly, "it is [also] clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  Accordingly, documents falling in these three categories may be properly

considered without converting the motion to dismiss into a motion for summary judgment.

Plaintiff attached to his current complaint copies of what he contends are the promissory note, the deed of trust, the recorded assignment from MERS to BAC, and the foreclosure notice sent by the law firm in August 2012. (*See* doc. 1-2 at 17–20, 29–49.) These documents are considered part of the pleadings. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Additionally, Defendants attached to their motion copies of Plaintiff's complaint in his first lawsuit, as well as the Court's memorandum opinion and order granting the defendants' motion for summary judgment. (*See* doc. 9-2 at 1–27.) These documents can be judicially noticed because they are matters of public record and their contents cannot reasonably be disputed. *See Norris*, 500 F.3d at 461 n.9; *see also* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"). Because the documents attached to Plaintiff's complaint and Defendants' motion to dismiss are either part of the pleadings or subject to judicial notice, conversion of the motion to dismiss into a motion for summary judgment is unnecessary.

**B.      Res Judicata in a Rule 12(b)(6) Context**[4]

Res judicata is generally "an affirmative defense that should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial." *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. App'x 662, 664 n.1 (5th Cir. 2004) (citing *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 n. 3 (5th Cir. 1977) ("Generally, a party cannot base a 12(b)(6) motion on res judicata."). Nevertheless, the Fifth Circuit has held that "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then

---

[4] Because res judicata is an absolute bar to a party's claims, this aspect of Defendants' motion is considered first.

dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).   Here, because the elements of res judicata appear on the face of Plaintiff's complaint and in documents that are subject to judicial notice, this defense may be considered for purposes of Defendants' motion to dismiss.   *See id.*; *see also Saint Paul Commodities, LLC v. Crystal Creek Cattle Co.*, No. 3:11-CV-0037-G, 2012 WL 3135574, at *3 n. 3 (N.D. Tex. Aug. 1, 2012) (considering the res judicata defense in a Rule 12(b)(6) context because "all [the] relevant facts [were] in the record and [were] uncontroverted").

## III. BANA & MERS

Defendants contend that both of Plaintiff's claims are barred by "res judicata" or "claim preclusion" because "the crux" of the claims is the same as that in his first lawsuit: that BANA lacked authority to foreclose because it was not the holder of the note.  (doc. 9-1 at 10–11.)  They contend that because this matter was "already decided ... adverse[ly] to Plaintiff," he is precluded from raising these claims, as they were or should have been litigated in that action.  (*Id.* at 11–15.)

The "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, No. 12-60291, 2013 WL 1975849, at *3 (5th Cir. May 14, 2013); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'")  "True res judicata" or "claim preclusion ... bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted).  This doctrine has four elements: "(1) the parties are identical or in

privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3)

the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause

of action was involved in both actions." *Comer*, 2013 WL 1975849, at *3.  As with all affirmative

defenses, the burden of proving claim preclusion "rests on the party claiming the benefit of the

doctrine." *Patterson v. Dean Morris, L.L.P.*, No. CIV.A. 08-5014, 2011 WL 1791235, at *6 (E.D.

La. May 6, 2011) (citation omitted); *accord Taylor*, 553 U.S. at 907.

## A.      Identical Parties or Privity with Identical Parties

With regard to MERS, it was named as a defendant in Plaintiff's first lawsuit and in this

action.  (*See* docs. 1-2 and 9-2.)  Because BANA was not a named defendant in Plaintiff's first

lawsuit, it can raise claim preclusion as a defense only if it was in privity with MERS, BAC, or the

law firm.  *See Test Masters*, 428 F.3d at 571; *see also Russell v. SunAmerica Sec., Inc.*, 962 F.2d

1169, 1173 (5th Cir. 1992) ("A non-party defendant can assert res judicata so long as it is in 'privity'

with the named defendant.")

Privity is in essence a "legal conclusion that the relationship between the one who is a party

on the record and the non-party is sufficiently close to afford application of the principle of

preclusion." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266–67 (5th Cir. 1990).  The Fifth Circuit

"has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party

is the successor in interest to a party's interest in property; (2) where the non-party controlled the

prior litigation; and (3) where the non-party's interests were adequately represented by a party to

the original suit." *Id.*[5]

---

[5] In *Taylor*, although the Supreme Court "avoid[ed] using the term 'privity'" to "ward off confusion," it identified six "exceptions" to "the rule against nonparty preclusion": (1) a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement; (2) preclusion may be justified based on a variety of pre-existing "substantive legal relationships" between the person to

Here, all parties contend that BANA is the successor by merger to BAC.  (*See* docs. 1-2 at 6, 17; 9-1 at 5.)  This relationship is sufficient to establish privity between BANA and BAC.  *See Butts v. JP Morgan Chase Bank*, No. 3-11-CV-2542-M-BD, 2011 WL 7109344, at *2 (N.D. Tex. Dec. 28, 2011), *recommendation adopted*, 2012 WL 258269 (N.D. Tex. Jan. 27, 2012) (holding that because the defendant in the second action was "the successor by merger" to the defendant in the first action, "[that] relationship [was] sufficient to establish privity") (citing Fifth Circuit cases); *see also Frank C. Minvielle LLC v. Atl. Ref. Co.*, 337 F. App'x 429, 435 (5th Cir. 2009) (per curiam) ("[N]onparty preclusion may be justified based on a ... pre-existing 'substantive legal relationship[]' between the [party and nonparty]..." such as "preceding and succeeding owners of property.") (citing *Taylor*, 553 U.S. at 893).  The first element of claim preclusion is satisfied as to BANA.

**B.      Court with Competent Jurisdiction**

With respect to the second element, Plaintiff filed his first lawsuit in state court, and the defendants properly removed that action to this Court based on diversity jurisdiction.  *See Torello*, 2012 WL 1888134, at *1; (docs. 9-1 at 13; 9-2 at 13).  Because the Court had jurisdiction over the case, this element is also satisfied.

**C.      Final Judgment on the Merits**

The third element is also met here because the Court in the first action granted the defendants' motion for summary judgment and dismissed all of Plaintiff's claims against them.  *See*

---

be bound and a party to the judgment, such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor"; (3) a nonparty may be bound by a judgment where she was "adequately represented" by a party to the suit having the same interests as the nonparty, such as in "properly conducted class actions ... and suits brought by trustees, guardians, and other fiduciaries"; (4) preclusion is appropriate if the nonparty "assumed control" over the litigation in which the judgment was rendered; (5) "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy"; and (6) a "special statutory scheme" may sometimes "expressly foreclose successive litigation by nonlitigants," such as statutes governing "bankruptcy and probate proceedings." *Taylor*, 553 U.S. at 893–96.  Notably, the Court cautioned that this list was "meant only to provide a framework" for nonparty preclusion rather than "a definitive taxonomy."  *Id.* at 893.

*Torello*, 2012 WL 1888134, at *3; (docs. 9-1 at 14; 9-2 at 8).   Summary judgment is a final

judgment on the merits.   *See Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir.

2005) ("A judgment that determines the merits in whole or in part is a final judgment.") (citation

omitted); *see also Davis v. Gusman*, No. CIVA 09-7195, 2010 WL 1727825, at *13 (E.D. La. Apr.

13, 2010), *recommendation adopted*, 2010 WL 1727821 (E.D. La. Apr. 28, 2010) (listing "cases in

which claim preclusion has been upheld by the Fifth Circuit involv[ing] summary judgment").

## D.   Same Claims

Defendants contend that the fourth requirement is satisfied because Plaintiff's claims for

simple fraud and fraud by nondisclosure "are clearly the same, or at the very least, are part of the

same transaction" as the claims he asserted in his first lawsuit.  (doc. 9-1 at 15.)  That is, the claims

are based on the same allegation that "BANA [was] not entitled to enforce the deed of trust unless

it [could] show itself to be the holder (or owner) of the note (or deed of trust)."  (*Id.*)

"To determine whether two suits involve the same claim or cause of action, [the Fifth

Circuit] has adopted the transactional test of the Restatement (Second) of Judgments, § 24."  *Petro-*

*Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004).   Under this test, the "inquiry

focuses on whether the two cases under consideration are based on 'the same nucleus of operative

facts.'"  *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (citations omitted).   "[I]t is

the nucleus of operative facts, rather than the type of relief requested, substantive theories advanced,

or types of rights asserted, that defines the claim."  *Id.*  Identifying the nucleus of operative facts

involves a "pragmatic" approach, "giving weight to such considerations as whether the facts are

related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether

their treatment as a unit conforms to the parties' expectations."  *Test Masters*, 428 F.3d at 571 (citing

Restatement (Second) of Judgments, § 24).   Ultimately, the "preclusive effect of [the] prior judgment extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'"   *Petro-Hunt*, 365 F.3d at 395–96  (citation omitted).

>    1.    *Operative Facts in the First Lawsuit*

In his first action, Plaintiff asserted claims for breach of contract, anticipatory breach of contract, and unreasonable collection efforts based on his allegation that MERS's assignment of the note he executed in January 2003 in favor of Franklin was ineffective because MERS did "not take possession of the note nor receive payments" under it.  (doc. 9-2 at 17–20.)  He also alleged that BAC was not the note's holder because the note was "in default" when MERS assigned it.  (*Id.* at 21.)  Consequently, he claimed that "[a]ny or all of the defendants [did] not have standing to foreclose" pursuant to the deed of trust he executed in favor of Franklin.  (*Id.* at 25.)  Lastly, he alleged that by filing the assignment "electronically," the "defendants" falsely represented that "the note was assigned properly" and that they had "full ... authority" to foreclose.  (*Id.* at 23–24.)

>    2.    *Operative Facts in the Current Lawsuit*

In the present action, Plaintiff asserts claims for simple fraud and fraud by nondisclosure, essentially alleging that MERS's assignment did not transfer the right to foreclose to BAC because MERS could not assign the note given that Franklin was the only entity identified as the "payee" on the note and as the "Lender" on the deed of trust.  (doc. 1-2 at 4–5, 9, 11.)  He claims that the "incomplete copy of the Promissory Note ... and [the] incomplete copy of the Deed of Trust" that the law firm sent him with the foreclosure notice were insufficient to prove BANA's authority to foreclose as either (1) the holder of the note, (2) the mortgagee, or (3) the mortgage servicer.  (*See*

*id.* at 6, 9.)  Lastly, he alleges that by failing to respond to his inquiries requesting information about the holder of the note and deed of trust, all three Defendants engaged in fraud, as they "concealed" from him "material facts related to the ... foreclosure."  (*Id.* at 9–12.)

> 3.   *"Transactional Test" Analysis*

Plaintiff's claims in both actions arise from the same transactions, or series of connected transactions: (1) Plaintiff obtaining a mortgage loan from Franklin in January 2003 and executing a note and deed of trust in its favor; (2) MERS's assignment of those documents to BAC in July 2009; and (3) BAC's (and therefore BANA's) attempts to foreclose on the Property in 2010 and 2012.  (*See* docs. 1-2 at 4–13; 9-2 at 14.)  The new factual allegations that he makes in the present suit are that: (1) BANA did not prove it could foreclose as the mortgagee or mortgage servicer, (2) Plaintiff accessed Fannie Mae's website to request information about his loan, and (3) Defendants did not respond to his written inquiries.  (doc. 1-2 at 6–9.)  Although he attempts to use these additional facts to support different theories of recovery, all of his allegations relate to BANA's attempt to foreclose on the Property.  Considered together, all of his claims are related in "motivation" and form a "convenient trial unit", as he states that his ultimate goal has been to "assess" whether BANA's attempted foreclosure was "lawful."  (*See* doc. 1-2 at 7.)  The court in the first action found in the affirmative.  *See Torello*, 2012 WL 1888134, at *3 (holding that BAC—and therefore BANA—had "the authority to foreclose the lien on the property" because MERS "properly transferred [that] right[] to BAC").

In conclusion, because all the elements of claim preclusion are satisfied with respect to BANA, Plaintiff's claims against it for simple fraud and fraud by nondisclosure are barred and should be dismissed with prejudice.  *See Butts*, 2011 WL 7109344, at *2 (dismissing the plaintiff's

claims as "barred by res judicata" because "both the instant action and the prior litigation [arose] out of the 'same nucleus of operative facts'—the mortgage loan obtained by [the] plaintiff on the subject property"); *see also Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., Inc.*, 776 F.2d 1270, 1274 (5th Cir. 1985) ("[O]ne who has a choice of more than one remedy for a given wrong ... may not assert them serially, in successive actions, but must advance all at once on pain of bar.") (internal quotations omitted).

Because all four elements of claim preclusion are satisfied with respect to MERS, Plaintiff's claims against it for simple fraud and fraud by nondisclosure are also barred. Accordingly, the Court should *sua sponte* dismiss these claims with prejudice. *See Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (*sua sponte* dismissing action against a defendant who had not joined the motion to dismiss, explaining that a "court has the authority to consider the sufficiency of a complaint and 'dismiss an action on its own motion as long as the procedure employed is fair'") (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006)).[6]

## IV.  FANNIE MAE

According to Defendants, the complaint shows that Fannie Mae "owns" Plaintiff's loan, "of which BANA is both the mortgagee and mortgage servicer," and therefore Fannie Mae's "interests in the loan [were] so closely aligned with BANA's as to be in privity with it for res judicata purposes." (doc. 9-1 at 13.)

---

[6]  The fourteen-day time frame for filing objections to the recommended dismissal ensures the procedure is fair by providing Plaintiff with notice and the opportunity to object. *See Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

A.      **Claim Preclusion**

Because Fannie Mae was not a named defendant in the first action, it can raise claim preclusion as a defense only if it was "in privity" with one of the defendants in that suit. *See Test Masters*, 428 F.3d at 571.  There are no allegations that Fannie Mae is a successor in interest to any property right litigated in the first action, or that it controlled that action.  It can meet the privity requirement only by showing that the defendants in the prior action "adequately represented" its interests. *See Meza*, 908 F.2d at 1266.

With regard to privity by "adequate representation, federal courts have consistently held that a non-party is bound if he authorized a party in the prior suit to represent his interests, or if he was represented as a member of a class or association in the original litigation.'" *Kinnison v. Humana Health Plan of Texas, Inc.*, CIV.A.C-07-381, 2008 WL 2446051, at *9 (S.D. Tex. June 17, 2008) (quoting *Meza*, 908 F.2d at 1267).  A nonparty may also be "adequately represented where a party in the prior suit [was] so closely aligned to [the nonparty's] interests as to be [the nonparty's] virtual representative."[7] *Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992) (citing *Meza*, 908 F.2d at 1267).  This type of privity "requires more than a showing of parallel interests," however, "it is not enough that the non-party may be interested in the same questions or proving the same facts." *Id.* (citation omitted).  Specifically, the Fifth Circuit has held that privity by adequate representation requires "an express or implied legal relationship in which [a] part[y] to the first suit [is] accountable

---

[7] In *Taylor*, the Supreme Court "unanimously" rejected "the theory of 'virtual representation' based on 'identity of interests and some kind of relationship between parties and nonparties.'" *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 (2011) (citing *Taylor*, 553 U.S. at 901).  Instead, the Court recognized that an exception to the rule against nonparty preclusion is when the nonparty's interests are adequately represented by a party to the original suit. *See Taylor*, 553 U.S. at 894–95, 901.

to [the] non-part[y]."[8]  *Meza*, 908. F.2d at 1272–73; *Kinnison*, 2008 WL 2446051, at *10 (citations

omitted).  In *Taylor*, the Supreme Court further specified that the representation of the nonparty's

interests is "adequate"only if (at a minimum): (1) the interests of the nonparty and her representative

are aligned ... *and* (2) either the party understood herself to be acting in a representative capacity or

the original court took care to protect the interests of the nonparty."  *Taylor*, 553 U.S. at 900

(parenthesis in *Taylor*) (emphasis added).  It held that "adequate representation sometimes requires

... notice of the original suit to the persons alleged to have been represented." *Id.* (citations omitted)

Here, Plaintiff's complaint is ambiguous regarding Fannie Mae's interests in the Property

or in his loan.  He states that he accessed Fannie Mae's website on July 18, 2012, and the site

"indicated that Fannie Mae owned [his] loan."  (doc. 1-2 at 7, 26.)  On August 14, 2012, he checked

the website again and was informed that "Fannie Mae had no interest in the property" and "[did] not

own [his] loan."  (*Id.* at 8, 27.)  He accessed the site for the third time on August 27, 2012, and the

system indicated that Fannie Mae did own his loan and had owned it since May 31, 2009.  (*Id.* at

8, 28.)  The next day, he sent Fannie Mae a letter inquiring about its purported ownership of the note

and deed of trust and requesting to "verify" his debt and to "negotiate" matters concerning his loan.

(*Id.* at 8, 22.)  He claims that Fannie Mae (as well as the other defendants) failed to answer his

inquiry and thereby committed simple fraud and fraud by nondisclosure.  (*See id.* at 11.)

Notably, even if Fannie Mae owned Plaintiff's loan or had an interest in the Property that

---

[8]  The Fifth Circuit has held that this privity exists, for example, where the "[non]party's claim is derivative
of the original party's claim." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003); *accord
Eubanks*, 977 F.2d at 170 (finding that "the interests at stake could not be more closely aligned" because the
nonparty's claims "derive[d] exclusively from claims asserted by her husband," the party to the original suit).  Other
examples include "estate beneficiaries bound by administrators, presidents and sole stockholders by their companies,
parent corporations by their subsidiaries, and a trust beneficiary by the trustee." *Kinnison*, 2008 WL 2446051, at
*10 (citations omitted).

was "closely aligned" with BANA's, Defendants have not alleged that BAC understood itself to be acting as Fannie Mae's "representative" in the first lawsuit, that "the original court took care to protect" Fannie Mae's interests, or even that Fannie Mae was given notice of that suit. *See Taylor*, 553 U.S. at 900.  They also fail to allege or otherwise show that BAC had "an express or implied legal relationship" with Fannie Mae making it accountable to Fannie Mae. *See Meza*, 908 F.2d at 1272–73.  Because Defendants have not met their burden to show that BAC adequately represented any interests that Fannie Mae may have had in the Property or in Plaintiff's loan, they have failed to show that Fannie Mae was in privity with BAC. *See id.* at 1273 (holding that there was no adequate representation, and therefore no privity, between the nonparty employee and the union that was a party to the original suit because the employee "did not authorize the union to represent him, and because the [union] did not represent his interests in any legal sense"); *Kinnison*, 2008 WL 2446051, at *11 (holding that despite having "parallel interests" with a party to the original suit, the nonparty defendant failed to prove they were in privity because it presented no "evidence regarding the requisite legal relationship to establish privity"); *compare Shakir v. Chase Home Fin., N.A.*, No. 2:10CV153-NBB-JMV, 2011 WL 4386303, at *4 (N.D. Miss. Aug. 29, 2011), *recommendation adopted*, 2011 WL 4383803 (N.D. Miss. Sept. 20, 2011) (finding there was privity between the party trustee and the nonparty bank because the trustee, which had been appointed by the bank pursuant to the terms of a deed of trust, adequately represented the bank's interests in the original suit).

Fannie Mae has not met its burden of establishing all the elements of its claim preclusion defense.  Its motion to dismiss on this basis should therefore be denied.

## B.     Issue Preclusion

Defendants argue that Plaintiff is precluded from asserting new claims against them that are

based on the same "crux" of his first lawsuit—that BANA failed to prove its authority to foreclose—because this issue was "already decided" adversely to Plaintiff. (doc. 9-1 at 11.) This argument implicates issue preclusion.

Collateral estoppel, or issue preclusion, "is limited to matters distinctly put in issue, litigated, and determined in the former action." *Next Level Commc'ns LP v. DSC Commc'ns* Corp., 179 F.3d 244, 250 (5th Cir. 1999) (citation omitted). This preclusion doctrine has three elements: (1) the issue at stake is identical to the one involved in the prior action; (2) the issue was actually litigated in that action; and (3) the determination of the issue was a critical and necessary part of that judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009) (citation omitted); *Petro–Hunt*, 365 F.3d at 397. Notably, "[i]ssue preclusion may apply even if the claims and the subject matter of the suits differ." *Wright v. Fed. Nat. Mortgage Ass'n*, No. CIV.A. H-12-288, 2012 WL 1190819, at *1 (S.D. Tex. Apr. 9, 2012) (citing *Next Level Commc's*, 179 F.3d at 250). Moreover, the "parties to the suits need not be completely identical, so long as the party against whom [collateral] estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." *Rabo Agrifinance*, 583 F.3d at 353 (citation omitted); *Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005).

Here, Plaintiff is the party against whom the collateral estoppel defense is being asserted. (*See* doc. 9-1.) Because he is a party to both actions, this defense may bar his present claims if the essential elements are satisfied. *See Rabo Agrifinance*, 583 F.3d at 353.

### 1.    Identical Issues at Stake

As discussed, all of Plaintiff's claims for relief are based on his allegation that BANA did not prove its authority to foreclose on the Property. In both actions, he claimed that (1) BANA was

not the holder of the note because MERS could not assign the note since MERS was not its holder or payee, and (2) BANA (as well as the other defendants) failed to provide sufficient evidence to show they could foreclose on the Property.  (*See* docs. 1-2 at 4–5; 9-2 at 18–2.)  This element is satisfied.

### 2.    Issues Actually Litigated

The second element is also met here because the issues were fully litigated in the first action. Specifically, the Court rejected Plaintiff's argument that "BAC lack[ed] the authority to enforce the deed of trust because it d[id] not also hold the note," and found that "MERS had the right to enforce the deed of trust as mortgagee ... [and] [b]ecause MERS then properly transferred [this] right[] to BAC, BAC ha[d] the authority to foreclose." *Torello*, 2012 WL 1888134, at *3.

### 3.    The Determination of the Issues was Necessary to the Judgment

The third element is also satisfied.  The court in the first suit held that "because [Plaintiff's] petition [was] based solely on BAC's asserted inability to foreclose, all of [his] claims fail[ed]." *Id.*

In conclusion, because the original court determined that MERS's assignment of the note and deed of trust to BAC was valid and that BAC (and therefore BANA) had authority to foreclose on the Property, those issues "cannot be relitigated here" by Plaintiff, "the party who lost in the first proceeding." *See Rabo Agrifinance*, 583 F.3d at 353.   Accordingly, Plaintiff's claims for simple fraud and fraud by nondisclosure against Fannie Mae should be dismissed with prejudice because they are barred by the doctrine of issue preclusion.

## V.  RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED**, and all of Plaintiff's claims against

them should be dismissed with prejudice.[9]

       **SO RECOMMENDED** on this 24th day of May, 2013.

                         IRMA CARRILLO RAMIREZ
                         UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

       A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                         IRMA CARRILLO RAMIREZ
                         UNITED STATES MAGISTRATE JUDGE

---

[9] Plaintiff seeks to enjoin the foreclosure, obtain declarations that Defendants lack standing to accelerate the note and foreclose on the Property, and recover damages, attorney's fees, and court costs.  (*See* doc. 1-2 at 13–14.)  Because his substantive claims are barred by res judicata, these requests should be dismissed.  *See Franklin v. BAC Home Loans Servicing, LP*, No. 3:10-CV-1174-M, 2012 WL 2679496, at *12 (N.D. Tex. June 6, 2012), *recommendation adopted*, 2012 WL 2688809 (N.D. Tex. July 5, 2012) (dismissing the plaintiff's request for attorney's fees because his substantive claims were dismissed); *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) ("To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'") (quoting *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)); *Turner*, 2011 WL 3606688, at *6 (dismissing the plaintiff's request for declaratory judgment where he pleaded no viable claim for relief).